**COGDELL LAW FIRM PLLC**
**DAN COGDELL**
**TX Bar No. 04501500**
**712 Main Street, Suite 2400**
**Houston, TX 77002**
**Phone: (713) 426-2244**
**Email: Dan@cogdell-law.com**

**THE LAW OFFICES OF DORIS LUM, LLC**
**DORIS LUM**
**JD No. 008365**
**1001 Bishop Street, Ste. 710**
**Honolulu, HI**
**Phone: (808) 762-7644**
**Email: doris@dorislumlaw.com**

**ATTORNEYS FOR DEFENDANT,**
**CHRISTOPHER MAZZEI**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **No. 1:22cr00045-JMS** |
| | § | |
| **CHRISTOPHER MAZZEI** | § | |

### DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Christopher Mazzei, through counsel, submits this sentencing memorandum. He first addresses his prior objection to PSR ¶ 44 (which was rejected by the probation officer) and then discusses information relevant to this Court's ultimate sentencing decision.

1

## I.
## PSR ¶ 44 Erroneously Enhances Mr. Mazzei's Offense Level by Three Levels Under USSG § 2S1.1(a)(1) &USSG § 2B1.1(b)(17)(A).

The PSR, cross-referencing USSG § 2B1.1(b)(17)(A), has applied a three-level enhancement – from offense level 21 to offense level 24 – after finding that "the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions. . . ."  PSR ¶ 44.  As the defendant previously has contended, in view of Application Note 13(A), the PSR errs by applying this enhancement.

The probation officer has agreed with the government's response in opposition to Mr. Mazzei's objection.  The government contended that:

> The gross receipts enhancement applies to Christopher Mazzei because he obtained the full amount of the fraud proceeds of the wire fraud conspiracy, either directly or indirectly.  Application Note 13(A) to Section 2B1.1, explains that: "For purposes of subsection (b)(17)(A), the defendant shall be considered to have derived more than $1,000,000 in gross receipts if the gross receipts to the defendant individually, rather than to all participants, exceeded $1,000,000." Application Note 13(B) to Section 2B1.1 defines "gross receipts from the offense" to "include[] all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." The Application Note cites to Title 18, United States Code, Section 982(a)(4), as the source of the standard. *Id*.

> Reviewing a predecessor guideline with the same application note guidance, the Ninth Circuit confirmed that the calculation of "gross receipts" that must reach the $1,000,000 threshold to trigger the enhancement is "the amount derived from the offense by each defendant individually," both "directly and indirectly." *United States v. Kohli*, 110 F.3d 1475, 1477 (9th Cir. 1997) (former U.S.S.G. 2F1.1(b)(6)). "The critical factor in the application of [the gross receipts] enhancement is that it turns on the culpability of the individual defendant." *Id*. . . .

> The gross receipts enhancement applies to Christopher Mazzei because he is individually culpable for the wire fraud conspiracy, and because he received and had control over the full amount of the fraud proceeds. . . . The fraud proceeds derived from the conspiracy is chargeable to Christopher Mazzei individually, directly or indirectly, as a result of the offense. . . . Christopher Mazzei had control over the full amount of $1,365,000 fraud proceeds that the Mazzeis received as a result of the conspiracy through his submissions. Accordingly, "[f]or the purposes of subsection (b)(17)(A), [Christopher Mazzei] shall be considered to have derived more than $1,000,000 in gross receipts." App. Note 13 to U.S.S.G. § 2B1.1(b)(17)(A). . . .

Government's Sentencing Memorandum, at 5-6.

The government's focus on the language "directly and indirectly" in the Application Note is a red herring.  The language in the Application Note that matters is "individually" versus "jointly."  Any "joint" receipt of ill-gotten funds by a defendant and another coconspirator cannot be added to the defendant's "individual" receipt to reach the $1,000,000 minimum amount triggering the enhancement.  *See United States v. Cano-Flores*, 796 F.3d 83, 92 (D.C. Cir. 2015) ("The [application] notes explain that § 2B4.1(b)(2)(A)[1] encompasses all property obtained 'directly or indirectly' *and also that the defendant is deemed to have 'derived' only sums received 'individually*.'") (emphasis added).

---

[1]  The exact same "gross receipts" enhancement appears in USSG § 2B4.1, the bribery guideline.

In this regard, the government errs by citing *United States v. Kohli*, 110 F.3d 1457 (9th Cir. 1997), in support of its position.  In *Kohli*, the Ninth Circuit actually rendered a decision that favors Mr. Mazzei's position – by holding that "no part of the amount found to have been derived by one defendant can be counted as having been derived by another defendant." *Id.* at 1477; *see also United States v. Weidner*, 437 F.3d 1023, 1046 (10th Cir. 2006) (citing *Kohli* for the proposition that "the same receipts cannot be counted against more than one defendant").  Therefore, if funds are received by one member of a conspiracy, individually or jointly along with another member of the conspiracy, those funds cannot be attributed to any other member of the conspiracy as an "individual" receipt for purposes of § 2B1.1(b)(17)(A).

In the present case, as part of their conspiracy, *both* defendants *jointly* received the around $650,000 of Paycheck Protection Program (PPP) funds wired to their *joint bank account*.  *See* PSR ¶ 22 ("Customers Bank approved the BHE PPP loan application and wired $92,500 to Pacific Premier Bank checking account #8237 *controlled by [Mr. and Mrs.] Mazzei[]*, under the name of BHE, doing business as GOTG.") (emphasis added); PSR ¶ 23 (". . . Northeast Bank approved the PPP loan, and on 04/27/2020, wired $562,500 *to the Mazzeis'* Pacific Premier Bank account #8237.") (emphasis added); PSR ¶ 24 ("Only BOH, after approving the PPP loan

4

application, mailed a cashier's check to C. Mazzei in the amount of $710,332."). *See also* PSR ¶ 25 (noting "the Mazzeis" jointly received $562,500 and $92,500 – first two cells of the box under "Transferred to/Signatories").

If both the Mazzeis jointly received those two amounts, Mr. Mazzei could not have "individually" received those two amounts. *Jointly and individually are mutually exclusive.* Therefore, the government and probation officer have erred by adding the $710,332 received by Mr. Mazzei (as a cashier's check from the Bank of Hawaii) to the other two amounts received – to get Mr. Mazzei to at least $1,000,000 for purposes of the "gross receipts" enhancement.

Remarkably, in Mrs. Mazzei's plea agreement, the government stated that *all* of the PPP funds were received *jointly*:

> The purpose of the conspiracy was for ERIN MAZZEI and Christopher Mazzei to obtain money from the PPP and participating lenders by submitting a false and fraudulent loan application and supporting documents on behalf of each of three companies that they owned, while concealing the fact that they were submitting multiple PPP loan applications. As a result of the scheme, **ERIN MAZZEI and Christopher Mazzei obtained approximately $1,365,000.00 in PPP funds** to which they were not entitled, which they used to pay for personal expenses and an unallowable new business venture. . . . **Upon receiving the aforementioned PPP loan funds, Christopher Mazzei and ERIN MAZZEI** moved the funds into their bank accounts and began spending the funds on unallowable personal and other expenses.

ECF No. 79, at 7, 12 (emphasis added).

Although Mrs. Mazzei may have received some of the funds (i.e., $710,332) "indirectly," she still received the funds jointly with Mr. Mazzei. For that reason,

5

the "gross receipts" enhancement does not apply to either defendant because neither "individually" received at least $1,000,000.

After reducing Mr. Mazzei's total offense level by three levels – based on the foregoing objection – his final offense level should be 17 rather than 20. Based in a Criminal History Category of I, his advisory sentencing guideline range should be 24-30 months rather than 33-41 months.

## II.
## Mitigating Factors in Mr. Mazzei's Case

Recognizing that he is precluded by the plea agreement from seeking a downward departure or variance, Mr. Mazzei nevertheless discusses the mitigating factors in his case for two reasons. First, those factors militate in favor of a sentence of the low end of the advisory guideline range (if this Court decides to sentence him within that range). And, second, such factors may be relevant to this Court's sentencing decision under 18 U.S.C. § 3553(a) if this Court *sua sponte* determines to impose a sentence that does not fall within that advisory range. *See Gall v. United States*, 522 U.S. 38, 49-50 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . The Guidelines are not the only consideration, however. . . . [T]he district judge should then consider all of the § 3553(a) factors . . . and must make an individualized assessment based on the facts presented.").

Christopher Mazzei is a first-time, non-violent offender who – as the U.S. Sentencing Commission's studies have shown[2] – poses an extremely low risk of recidivism.  He is a devoted father to two young sons.  He intentionally has avoided the "sins of the father" by acting as a very different parent from his own father.  PSR ¶¶ 65, 67.  Other than his aberrational actions during the early days of the COVID pandemic (resulting in the charges in this case), he has worked very hard to build successful businesses during the past two decades – including his current fitness business – and be a productive member of society.  PSR ¶¶ 82-86.   Finally, he has worked to pay the restitution in this case and will continue to do so until every penny is repaid.

Above all else, Christopher Mazzei is a family man – a devoted husband father:

---

[2] The Commission's two recidivism reports – *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 2017), and *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* (Mar. 2017) – are available at:

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.





The attached character letters (**Appendix A**)[3] demonstrate the many positive

qualities of Mr. Mazzei.  Among the things that his friends and family say about

him:

> • "Throughout the years, Chris has demonstrated nothing but integrity, commitment, and compassion.  He is always offering help to someone and will give the shirt off his back to those less fortunate.  His selflessness reaches all of his friends and acquaintances in times of need. One of the most

---

[3] Also attached in Appendix A is Mr. Mazzei's letter to this Court.

remarkable traits I've observed in Chris is his unwavering dedication to his family." (Marisa Haarsma, Chris's longtime friend)

• "If it wasn't for Chris Mazzei, I would be dead. My name is Matt Gaines and I am the owner of MG Sports Supplements located in San Luis Obispo. I have known Chris for over 20 years. I was a groomsman in his wedding to Erin. Years ago, I had a leg injury and was prescribed Oxycodone for the pain. This lead me down a horrible road where I almost lost my business and contemplated suicide. Chris was always there for me and did as much as he could to help me through those tough times. His continued presence and never giving up on me saved my life." (Matt Gaines)

• "Throughout the[] years, one constant has stood out: Chris's unwavering devotion to his family. He is a doting father and a committed husband who always puts the needs of his family first, often ahead of personal or professional interests." (PJ Haarsma, a friend and professional colleague)

• "He is a loving father, a dedicated husband, and a kind-hearted individual. I am proud of the man he has become." (Reese Davies, Chris's step-father)

• "Despite the challenges he faced in his relationship with his father, Chris grew up to an incredibly loving and dedicated father himself. He is deeply involved in the lives of his two sons, Luca and Nico." (Vicki Mazzei, Chris's mother)

• "Chris is . . . a very devoted father to his two sons, something that was missing in his life growing up . . . ." (William Donahue, Chris's father-in-law)

• "Chris's strongest quality is his devotion to his wife Erin and his children, Luca and Nico. I have seen him time and time again doing things out of complete love. He would sacrifice his own life for them." (Leanne Donahue, Chris's mother-in-law)

• "Family is of utmost importance to Chris and Erin. Erin consistently serves as a room parent for both of their sons' classes, while Chris volunteers at his kids' school, helping with events like walk-a-thons, overnight camps, and end-of-school-year parties. He's also actively involved in daily school drop-offs and pick-ups. I once asked Chris why both he and Erin are always together for these daily routines. His response was that, despite the repetition and tedium, they don't want to miss any of the small moments of their kids'

9

lives. They want their children to know that they are always there for them."
(Jeremy Engle, Chris's longtime friend)

\*\*\*

For the foregoing reasons, Mr. Mazzei requests that this Court sustain his objection to the PSR.

DATED: Honolulu, Hawaii, January 2, 2025.

Respectfully submitted,

**COGDELL LAW FIRM, PLLC**

By:　*/s/ Dan L. Cogdell*
　　　Dan L. Cogdell
　　　State Bar No. 04501500
　　　712 Main. St., Suite 2400
　　　Houston, Texas 77002
　　　Telephone: (713) 426-2244
　　　Email: dan@cogdell-law.com

**THE LAW OFFICE OF DORIS LUM, LLC**

By:　*/s/ Doris Lum*
Doris Lum
JD No. 008365
1001 Bishop Street, Ste. 710
Honolulu, HI
Telephone: (808) 762-7644
Email: doris@dorislumlaw.com

**ATTORNEYS FOR DEFENDANT, CHRISTOPHER A. MAZZEI**

10

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record in this case when I e-filed it using this Court's CM/ECF system.

/s/ *Dan L. Cogdell*
Dan L. Cogdell

11