KENNETH M. SORENSON
United States Attorney
District of Hawaii

GREGG PARIS YATES #8225
Assistant U.S. Attorney
District of Hawaii
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
E-Mail:   Gregg.Yates@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. CR22-00045 JMS-01 |
| ) | CASE NO. CR26-00025-JMS-KJM |
| Plaintiff, ) | |
| ) | GOVERNMENT'S RESPONSE |
| vs. ) | IN OPPOSITION TO DEFENDANT |
| ) | CHRISTOPHER A. MAZZEI'S |
| CHRISTOPHER A. MAZZEI,  (1) ) | MOTION UNDER 28 U.S.C. § 2255 TO |
| ) | VACATE, SET ASIDE, OR CORRECT |
| Defendant. ) | SENTENCE BY A PERSON |
| ) | FEDERAL CUSTODY; EXHIBITS A-D |
| _____ ) | CERTIFICATE OF SERVICE |

GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT CHRISTOPHER A. MAZZEI'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
<u>CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY</u>

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

    I.   Procedural History......................................................................................2

    II.  Christopher Mazzei's Representation...........................................................3

ARGUMENT ....................................................................................................4

    I.   Legal Standard..........................................................................................4

    II.  The Defendant Knowingly and Voluntarily Waived the Right to File a
        Section 2255 Motion to Collaterally Attack His Conviction and Sentence,
        Other Than Upon the Ground of Ineffective Assistance of Counsel ..............7

    III.  The Defendant Did Not Receive Ineffective Assistance of Counsel ............11

       A.   The Record Does Not Support the Motion's Claim of Ineffective
           Assistance From Attorney Richard Gronna ...............................................12

       B.   Attorney Cogdell Reasonably Did Not Raise Issues to the Court's
           Attention Pertaining to Discovery Violations or the Terms of the Plea
           Agreement in Light of the Defendant's Decision to Plead Guilty.............13

       C.   Attorney Cogdell Provided Reasonable and Competent Legal
           Assistance at the Defendant's Sentencing ................................................20

1.   Attorney Cogdell Relayed the Defendant's Request to Cooperate to the Government Several Times; The Government Did Not Accept ................... 20

2.   Attorney Cogdell Reasonably Refrained from Challenging the Court's Correct Sentencing Calculation Based Upon Actual Loss .............................. 21

3.   No Prejudice Resulted from Attorney Cogdell's Decision Not to Object to the Factual Record at Sentencing ................................................................. 24

4.   No Prejudice Resulted From Attorney Cogdell's Failure to Raise Other Arguments Regarding Government Conduct At or After Sentencing ...... 28

D.   The Motion's Remaining Claims Pertaining to Attorney Cogdell Fail to Demonstrate Any Prejudice ....................................................................31

IV.  Most of the Motion's Grounds are Procedurally Defaulted [Grounds II, III, IV].................................................33

V.   Defendant's Remaining Grounds are Not Cognizable Under Section 2255 [Ground III] ................................................................35

CONCLUSION ................................................................................37

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                              <u>Page(s)</u>

*Blackledge v. Allison*,
  431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)  ........................................ 11

*Boag v. Raines*,
  769 F.2d 1341 (9th Cir. 1985)  ........................................................................ 16

*Boehme v. Maxwell*,
  423 F.2d 1056 (9th Cir. 1970)  ........................................................................ 31

*Bousley v. United States*,
  523 U.S. 614 (1998)  ........................................................................................ 35

*Brady v. United States*,
  397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)  ..................................... 14

*Coleman v. Thompson*,
  501 U.S. 722 (1991)  ........................................................................................ 35

*Cooper v. Fitzharris*,
  551 F.2d 1162, 1166 (9th Cir. 1977)  .............................................................. 16

*Cunningham v. Wong*,
  704 F.3d 1143 (9th Cir. 2013)  .................................................................... 15-16

*Dodd v. United States*,
  321 F.2d 240 (9th Cir. 1963)  .......................................................................... 34

*Davis v. United States*,
  417 U.S. 333 (1974)  .......................................................................................... 5

*Garcia-Santos v. United States*,
  273 F.3d 506 (2d Cir. 2001)  ........................................................................... 35

*Hammond v. United States*,
  408 F.2d 481 (9th Cir. 1969)  ...................................................................... 34-35

*Ivy v. Pontesso*,
  328 F.3d 1057 (9th Cir. 2003)  ....................................................................... 4-5

Cases                                                                    Page(s)

*Lorentsen v. Hood*,
   223 F.3d 950, 953 (9th Cir. 2000) ................................................... 4-5

*Mahrt v. Beard*,
   849 F.3d 1164 (9th Cir. 2017) ......................................................... 14

*Massaro v. United States*,
   538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed. 2d 714 (2003) ................................. 35

*Strickland v. Washington*,
   466 U.S. 668 (1984) ..................................................... 6, 12, 20, 33

*Tollett v. Henderson*,
   411 U.S. 258 (1973) ................................................................... 14

*United States v. Abarca*,
   985 F.2d 1012 (9th Cir. 1993) ......................................................... 8

*United States v. Anglin*,
   215 F.3d 1064 (9th Cir. 2000) ......................................................... 8

*United States v. Banks*
   55 F.4th 246 (3d Cir. 2022) ....................................................... 23-24

*United States v. Davis*,
   706 F.3d 1081 (9th Cir. 2013) ......................................................... 18

*United States v. Finze*,
   428 Fed. Appx. 672 (9th Cir. 2011) .................................................... 36

*United States v. Freitekh*,
   114 F.4th 292 (4th Cir. 2024) ......................................................... 23

*United States v. Hackett*,
   123 F.4th 1005 (9th Cir. 2024) ........................................................ 23

*United States v. Jackson*,
   21 F.4th 1205 (9th Cir 2022) .......................................................... 8

*United States v. Leonti*,
   326 F.3d 1111 (9th Cir. 2003) ......................................................... 7

iv

<u>Cases</u>                                                                                         <u>Page(s)</u>

*United States v. Marchese,*
   341 F.2d 782 (9th Cir. 1965) ........................................................................ 34

*United States v. Newman,*
   659 F.3d 1235 (9th Cir. 2011) ...................................................................... 18

*United States v. Pacheco-Navarette,*
   432 F.3d 967 (9th Cir. 2005) ........................................................................ 17

*United States v. Quan,*
   789 F.2d 711 (9th Cir. 1986) ..................................................................... 7, 12

*United States v. Rodriguez,*
   49 F.4th 1205 (9th Cir. 2022) ........................................................................ 8

*United States v. Speelman,*
   431 F.3d 1226 (9th Cir. 2005) ..................................................................... 8-9

*United States v. Thiele,*
   314 F.3d 399 (9th Cir. 2002) ........................................................................ 36

*United States v. Timmreck,*
   441 U.S. 780 (1979) ...................................................................................... 36

*United States v. Transfiguracion,*
   442 F.3d 1222, 1228 (9th Cir. 2006) .............................................................. 8

*United States v. Wilcox,*
   640 F.2d 970 (9th Cir. 1981) .......................................................................... 5

<u>Statutes and Rules</u>                                                                       <u>Page(s)</u>

18 U.S.C. § 982 ............................................................................................ 26, 27
18 U.S.C. § 1349 ................................................................................................. 2
18 U.S.C. § 1956 ................................................................................................. 2
18 U.S.C. § 3553 .......................................................................................... 28, 29
21 U.S.C. § 853 ................................................................................................. 30
28 U.S.C. § 2255 ......................................................................................... *passim*

v

| Statutes and Rules | Page(s) |
|---|---|
| U.S.S.G. § 2B1.1 ................................................................... | 21, 22, 23, 24 |
| U.S.S.G. § 5K1.1 ................................................................... | 20 |
| Fed. R. Crim. P. 11 ................................................................... | 17 |

<u>INTRODUCTION</u>

Defendant Christopher Mazzei moves pursuant to Title 28, United States Code, Section 2255 for an order to vacate, set aside, or correct his sentence (Motion).   The Motion makes approximately 18 claims that fall into four categories: (I) ineffective assistance of counsel; (II) misconduct and *Brady* violations committed by the prosecution; (III) forfeiture and restitution issues; and (IV) additional constitutional issues.

The government respectfully submits its brief in opposition to the Motion. First, the defendant waived his right to challenge his conviction or sentence in a Section 2255 motion when he signed a Memorandum of Plea Agreement (MOPA), and pled guilty to two counts of the Indictment.   The waiver in the MOPA encompasses all legally waivable claims and permits only claims based upon ineffective assistance of counsel.   The defendant's admissions under oath in his plea colloquy also foreclose many of the grounds of his Motion.

The Motion's ineffective assistance of counsel ground itself comprises 12 factual allegations.   Motion 4-5, 16-18.   These allegations fail to show that his counsel's performance was incompetent or prejudiced him.

Finally, many of the grounds of the Motion have been procedurally defaulted, or are not cognizable pursuant to 28 U.S.C. § 2255.

BACKGROUND

I.    Procedural History

On May 26, 2022, a Federal grand jury returned a four-count indictment against Christopher A. Mazzei and Erin V. Mazzei, charging them with conspiracy to commit wire fraud [Count 1], wire fraud [Count 2], conspiracy to launder money [Count 3], and money laundering [Count 4].   ECF No. 1.

On August 28, 2024, both Christopher and Erin Mazzei entered pleas of guilty to Counts 1 and 3 of the Indictment pursuant to plea agreements.   Count 1 charged them with conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349; Count 3 charged them with conspiracy to launder money, in violation of Title 18, United States Code, Section 1956(h).   ECF Nos. 77-79.   Each plea agreement contained a waiver of the defendant's right to appeal the conviction and sentence, except that each defendant retained the "right to appeal the portion of [the] sentence greater than specified in [the] guideline range and the manner in which that portion was determined and to challenge that portion of his sentence" in a motion pursuant to Title 28, United States Code, Section 2255.   MOPA ¶ 13(b), ECF No. 78.   The Mazzeis also each waived the right to challenge his/her conviction or sentence in a Section 2255 motion on all grounds other than ineffective assistance of counsel.   *Id.* ¶ 13(a), ECF No. 78.

2

On January 9, 2025, the Court sentenced Christopher Mazzei to a term of imprisonment of 36 months, followed by a term of supervised release of 3 years, as well as restitution of $1,418,174.70.  ECF No. 106.  The Court sentenced Erin Mazzei to a term of imprisonment of 27 months, followed by a term of supervised release of 3 years, as well as restitution of $1,418,174.70.  *Id.*  The Court also entered an order of forfeiture against both defendants, which included an order for certain specific property, including a home in Kapolei, Hawaii and their home in Arroyo Grande, California, both of which they paid for in part with fraud proceeds. ECF No. 105.  Neither defendant appealed.

On January 23, 2026, Christopher and Erin Mazzei each filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  ECF Nos. 123, 124.

II.    Christopher Mazzei's Representation

In pre-indictment communications with the United States, Christopher Mazzei had retained a criminal defense attorney, Amanda Touchton, Esq, to represent him.  On June 13, 2022, shortly after indictment, Christopher Mazzei accepted Court-appointed representation from Richard Gronna.  ECF No. 6.

3

On September 19, 2022, Attorney Gronna filed a motion to withdraw as counsel.   ECF No. 21.   The Court granted the motion and appointed Jason Say to represent Christopher Mazzei.   ECF Nos. 25, 26.

On April 10, 2023, Attorney Say filed a Motion to Withdraw as Attorney. ECF No. 38.   The Court granted Attorney Say's Motion and appointed Harlan Kimura to represent Christopher Mazzei.   ECF Nos. 42, 43.

Christopher and Erin Mazzei then together retained attorney Andrew Marcantel, Esq., to represent them jointly.   Attorney Marcantel entered an appearance on behalf of both Mazzeis on September 19, 2023, and Attorney Kimura withdrew from representing Christopher Mazzei.   ECF No. 49.

On March 28, 2024, Christopher Mazzei filed a motion to substitute Dan Cogdell, Esq. as his counsel of record.   ECF No. 71.   The Court granted the defendant's motion on the same date.   ECF No. 73.   Attorney Cogdell represented Christopher Mazzei at the time of his guilty plea and through sentencing and judgment.

## ARGUMENT

### I.   Legal Standard

In general, Section 2255 of Title 28 of the United States Code provides the exclusive procedural mechanism by which a federal prisoner may test the legality

4

of his detention.   *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003), *quoting*

*Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000).    Under Section 2255, "[a]

prisoner in custody under sentence of a court established by Act of Congress

claiming the right to be released upon the ground that the sentence was imposed in

violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such a sentence, or is otherwise subject to collateral

attack, may move the court which imposed the sentence to vacate, set aside or

correct the sentence."   28 U.S.C. § 2255(a); *United States v. Wilcox*, 640 F.2d 970,

972 (9th Cir. 1981).    Section 2255 is "intended to afford federal prisoners a

remedy identical in scope to federal habeas corpus."   *Davis v. United States*, 417

U.S. 333, 343 (1974).

A section 2255 motion is not an unlimited procedural mechanism; grounds

for Section 2255 are limited to: (1) constitutional issues, (2) challenges to the

district court's jurisdiction to impose the sentence, (3) challenges to the length of a

sentence in excess of the statutory maximum, and (4) claims that the sentence is

otherwise subject to collateral attack.   *Wilcox*, 640 F.2d at 972.   Where the

moving party does not allege a lack of jurisdiction or constitutional error, there is

no basis for collateral relief under Section 2255 unless the claimed error constitutes

a fundamental defect which inherently results in a complete miscarriage of justice.

5

*Id.* 972-73.

Pursuant to Section 2255, a petitioner may seek to set aside his conviction on the ground that his Sixth Amendment right to counsel was violated because he received ineffective assistance of counsel. *Strickland* articulates a two-prong test to establish ineffective assistance of counsel: (1) deficient performance by counsel (the "incompetence prong"); and (2) that such deficient performance prejudiced his defense (the "prejudice prong"). *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *See id*. 700.

The court's analysis of an ineffective assistance of counsel claim does not require the mechanical application of the standards articulated in *Strickland*. *Id*. 696. The *Strickland* Court explained,

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

6

*Id.* 697.

When considering a Section 2255 petition, the petitioner's allegations need not be accepted as true to the extent that they are contradicted by the record. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986), *cert. denied*, 478 U.S. 1033 (1986).   If the petitioner's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal, no evidentiary hearing is required.   *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003).

II.    The Defendant Knowingly and Voluntarily Waived the Right to File a Section 2255 Motion to Collaterally Attack His Conviction and Sentence, Other Than Upon the Ground of Ineffective Assistance of Counsel

The defendant waived the right to collateral attack his conviction and sentence on grounds other than ineffective assistance of counsel (Ground I) in his plea agreement with the government.   In the MOPA, the defendant agreed that he "waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 . . . ."   MOPA ¶ 13(a), ECF No. 78.   The MOPA only preserved the defendant's right to collaterally attack the portion of his sentence that was greater than his sentencing guidelines range, and a claim based upon ineffective assistance of counsel.   *Id.*

7

A defendant may waive a right to collaterally attack a conviction and sentence pursuant to 28 U.S.C. § 2255.   *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).   Courts recognize that strong public policy considerations justify the enforcement of plea agreements containing knowing and voluntary waivers of the statutory right to collateral attack a conviction or sentence because such "waivers usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements."   *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000).   A waiver is enforceable if the language of the waiver encompasses the defendant's right to collaterally challenge a conviction on the ground raised, and the waiver is knowingly and voluntarily made.   *United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022).

The language of the defendant's collateral attack waiver clearly encompasses most of the grounds in the Motion.   The analysis of the collateral attack waiver in a plea agreement is generally conducted under the ordinary rules of contract interpretation.   *United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir 2022), *citing United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006).   Thus, if the terms of the plea agreement and an appeal waiver are clear and unambiguous on their face, the Court does not look to extrinsic evidence to determine their meaning.   *United States v. Speelman*, 431 F.3d 1226, 1229 (9th

8

Cir. 2005).   The defendant's plea agreement here contains a clear and unambiguous waiver of his "right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255," and should be enforced.   MOPA ⁋ 13(a), ECF No. 78.

Moreover, the defendant's waiver was knowing and voluntary.   The defendant appeared at his plea hearing with counsel and affirmed under oath that he was alert, competent, and capable of entering a plea.   Exh. A (Transcript of August 28, 2024 Change of Plea Hearing at 2:10-14; 5:17-9:10).   The defendant confirmed that he knowingly entered into a plea agreement with the government, and that he understood its terms.   *Id.* at 20:18-21:20.   The defendant then confirmed under oath at his plea hearing that he understood that he was waiving his ability to collateral attack his conviction.   *Id.* at 25:25-27:17.   The defendant then entered a guilty plea and the Court accepted the plea.   *Id.* 70:10-16.

The defendant enjoyed a significant benefit from his plea bargain: in exchange for the collateral challenge waiver, the government agreed to not to file unrelated bank fraud charges against the Mazzeis in connection with fraudulent submissions that they had made to at least three mortgage lenders with respect to two homes that the Mazzeis sought to purchase with the proceeds of their charged

9

fraud, and earlier, for a home they purchased prior to their charged fraud.   MOPA

¶ 4, ECF No. 78.   The government also agreed not to charge the Mazzeis with

identity theft in connection with one of these fraudulent submissions.   *Id.*

The Motion now suggests that the plea agreement was involuntary and

coerced because the prosecution "had threatened to file charges against his 77-

year-old mother who was not connected to the case in any way, shape, or form."

Motion 5, 17.   Attorney Cogdell refutes this claim, and explains the actual

motivation for the defendant's decision to plead guilty.

Attorney Cogdell explains that the defendant was "extremely familiar with

the discovery in his case, and believed that a trial was in his best interest.   Exhibit

B at 4 (Declaration of Dan Cogdell).   The defendant discussed possible defenses

on multiple occasions.   *Id.*   However, the government presented Attorney Cogdell

with evidence that supported additional bank fraud and aggravated identity theft

charges, including proof that Christopher Mazzei had "literally 'cut and pasted'

false information into Bank statements that were ultimately provided to lenders

which greatly inflated the amounts in Mazzei's accounts."   *Id.*   The government

then offered the defendant the choice of accepting a plea to the existing charges, or

the government would charge him with additional bank fraud and aggravated

identity theft counts "which effectively more than doubled his exposure."   *Id.*

10

Attorney Cogdell opined that the additional charges were "virtually impossible to defend against."  *Id.*   Attorney Cogdell discussed the offer on multiple calls with the defendant, and on calls with Erin Mazzei and her attorney.  *Id.*   The defendant ultimately decided to plead guilty to his then-existing charges.   Attorney Cogdell indicates that he "know[s] absolutely nothing about" any purported threat by the government against the defendant's mother, as alleged in the Motion.   Exh. B at 4.

Consistent with Attorney Cogdell's account, the defendant appeared at his change of plea hearing and expressly denied under oath that anyone had "made any promise or assurance to you of any kind in an effort to get you to enter a plea of guilty other than what is in the plea agreement itself" and that "anyone threatened you or anyone else, or forced you in any way to plead guilty."   Exh. A (Aug. 28, 2024 Hrg. Tr. 8:22-9:3).   "Solemn declarations in open court carry a strong presumption of verity."   *Blackledge v. Allison*, 431 U.S. 63, 75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

In sum, the defendant knowingly and voluntarily waived his right to collaterally attack his conviction and sentence on all grounds contained in his Motion, other than upon the basis of ineffective assistance of counsel.

III.    The Defendant Did Not Receive Ineffective Assistance of Counsel

The Motion fails to demonstrate that the defendant received ineffective

11

assistance of counsel.   As to this ground, the Motion makes two kinds of arguments: (1) Attorney Cogdell failed to raise various legal arguments at the change of plea and sentencing phases of the prosecution, such as objections to the government's purported discovery violations, a term of the plea agreement, the factual record at sentencing, and the Court's sentencing calculation, and inquiring about the application of forfeiture to restitution; and (2) Attorney Cogdell failed to communicate with the defendant, relay requests to the government to cooperate, or remove himself "after concerns were raised" of his representation.   Mot. 4-5. These arguments do not satisfy the defendant's burden to establish either the incompetence prong or prejudice prong of *Strickland*.

   A. The Record Does Not Support the Motion's Claim of
      <u>Ineffective Assistance From Attorney Richard Gronna</u>

The defendant fails to establish that his first court-appointed attorney, Richard Gronna, was ineffective.   The Motion argues that "[i]n the year that Gronna represented Mazzei, he did no motions, no interviews, no files, no review, not even returning a phone call," before he withdrew from representation.   *Id.* 16.

   The uncontradicted record does not support the Motion's claims against Attorney Gronna.   *Quan*, 789 F.2d at 715 (allegations need not be accepted as true if contradicted by the record).   The Indictment against the defendants was filed on May 26, 2022; the Court appointed Attorney Gronna to represent Christopher

12

Mazzei about 3 weeks later, on June 13, 2022.   ECF Nos. 1, 6.   Attorney Gronna

filed a motion to withdraw from representation on September 19, 2022, just three

months after that, far short of the year that the defendant alleges.   ECF No. 21.

Christopher Mazzei did not enter a plea of guilty until two years later, on August

28, 2024.   ECF No. 77.   During this time, Christopher Mazzei was represented by

four other attorneys.   The Motion fails to show that Attorney Gronna's conduct in

the three months that he represented Christopher Mazzei prejudiced him afterward.

B. Attorney Cogdell Reasonably Did Not Raise Issues to the Court's
   Attention Pertaining to Discovery Violations or the Terms of the Plea
   Agreement in Light of the Defendant's Decision to Plead Guilty

The Motion fails to establish that Attorney Cogdell provided ineffective

assistance of counsel prior to and at his change of plea of hearing.   As to the

period prior to his guilty plea, the Motion alleges that Attorney Cogdell "did not

argue *Brady* Violation," in particular, that the government "suppressed

[exculpatory] emails," "tendered a plea deal that prohibited ALL downward

departures," and "did not question [the] judge['s] comments about [whether]

forfeiture would be applied to restitution."   Motion 4-5.   However, the

defendant's knowing and voluntary guilty plea negated any basis upon which

Attorney Cogdell might have challenged the government's evidence based upon a

13

violation of its discovery obligations, or any objection to the terms in the plea agreement.

"That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized."  *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment."  *Id.*  "But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial – a waiver of his right to trial before a jury or a judge."  *Id*.  Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  However, "there is an exception to the general rule barring federal habeas relief arising out of pre-plea constitutional violations" that permits a petitioner to "'attack the voluntary and intelligent character of the guilty plea' based on pre-plea ineffective assistance of counsel. . . ." *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017), *quoting Tollett*, 411 U.S. at 267-68.

By pleading guilty, the defendant waived any challenge to the government's evidence, including one based upon its purported failure to provide exculpatory evidence.   The Motion alleges that the government "suppressed emails from the loan originators that explicitly stated that payroll projections were acceptable for [Paycheck Protection Program (PPP)] loan applications."   Motion 17.   This evidence is apparently relevant to whether the Mazzeis possessed the requisite intent to deceive and cheat for Count 1, the wire fraud conspiracy.

However, both defendants admitted to their fraudulent conduct and their intent under oath at their change of plea hearing: in particular, they admitted that they were aware that they had provided false records to banks in support of their PPP loan applications and that they lied about owning other businesses that were receiving PPP loans, and that they did so with the intent to defraud the banks.   *See generally* Exh. A (Aug. 28, 2024 Hrg. Tr. 51:17-61:2).   Following their admissions, Attorney Cogdell reasonably did not pursue any objection based upon a discovery issue.

Indeed, separate and apart from whether the exculpatory evidence that the Motion claims existed, i.e., emails from loan originators to the defendants instructing them to submit false PPP applications, this evidence was in the possession of the defendants themselves at the time of their plea.   "[N]o *Brady*

15

issue exists if the alleged suppressed information was apparent to the defendant or within the knowledge of the defendant." *Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013). Therefore, any *Brady* violation argument would have been meritless, and Attorney Cogdell's purported failure to raise one does not constitute ineffective assistance. *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985), *citing Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

The defendant also waived the right to challenge his plea agreement upon the ground that it "prohibited ALL downward departures," which the Motion now characterizes as "coercive" and "unconstitutional." Motion 5, 17. Attorney Cogdell explained this term to the defendant when he was considering the government's plea offer, and he was "plainly aware of this restriction" when he signed the plea agreement. Exh. B at 4 (Cogdell Decl.). As shown in Part II, *supra*, the defendant entered into the plea knowingly and voluntarily, and not as a result of coercion, and stated as much under oath at his change of plea hearing. Exh. A (Aug. 28, 2024 Hrg. Tr. 11:14-23). By so doing, he waived any objections to any particular terms, and Attorney Cogdell reasonably did not seek to challenge the validity of the plea agreement on this basis.

16

Moreover, the Motion mischaracterizes the plea agreement to support its attack upon one of its terms.   Paragraph 10(a) of the Mazzeis' plea agreements restricted the defendants from "argu[ing] for a sentence within the calculated advisory guideline range," but permitted the Court to depart from the advisory guidelines range.   ECF No. 78 ¶ 10(a) ("CHRISTOPHER MAZZEI understands that this stipulation is not binding on the Court.").   Paragraph 10(a) cited to Federal Rule of Criminal Procedure 11(c)(1)(B), which explicitly states that "a recommendation or request" pursuant to it "does not bind the court."   Fed. R. Crim. Proc. R 11(c)(1)(B).   In any event, stipulated sentencing ranges are legally permissible, and not unconstitutional.   *United States v. Pacheco-Navarette*, 432 F.3d 967, 970 (9th Cir. 2005) (permitting stipulated sentencing range even outside Guidelines range).   Any argument to the contrary would have been meritless.

Finally, Attorney Cogdell reasonably did not "question [the] judge['s] comments about [whether] forfeiture would be applied towards restitution," as the Motion argues he should have.   The Motion claims that the Court "made allusions to how recovered funds should work in relation to restitution, giving the impression that [the] Mazzeis would not pay twice for the same amount.   Mot. 18; *see also* Mot. 7 ("The Court misled defendants at [the] Change of Plea hearing about how recovered/forfeited funds would be applied to restitution.").

17

Notwithstanding the defendant's claim that the Court misled them, the defendant's MOPA unambiguously states that the defendant was subject to both forfeiture and restitution, and that "the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any . . . restitution . . . ."   MOPA ¶ 15(f), ECF No. 78.   This term is consistent with Ninth Circuit authority, which holds that forfeiture and restitution are distinct and represent separate remedies with different purposes.   *United States v. Davis*, 706 F.3d 1081, 1083 (9th Cir. 2013); *United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011).   Forfeiture is a punishment for the commission of crime; restitution serves to make the victim whole.   *Davis*, 706 F.3d at 1084 ("[Forfeiture and restitution] are different in nature, kind, and purpose."); *Newman*, 659 F.3d at 1241.   "Money levied as a punitive fine does not 'double' the money intended to compensate a loss anymore [*sic*] than the addition of apples to one's store doubles the orange stock."   *Davis*, 706 F.3d at 1084.   Therefore, a defendant convicted of a fraud crime against the government is subject to both forfeiture and restitution, and one does not offset the other.   *Id.* ("[T]here is no provision that authorizes an offset solely because the government will receive both restitution and forfeiture.   Because Congress clearly knew how to provide for offset in other situations, we conclude it did not intend it here.").

18

The Court's statements at the defendant's change of plea hearing were clear that the defendant would be subject to two distinct obligations for forfeiture and restitution, which was consistent with the MOPA.   Exh. A (Aug. 28, 2024 Hrg. Tr. 18:7-12) ("So, in addition to forfeiture, there would be a restitution order."). However, upon questioning from Erin Mazzei as to the amount of restitution owing, the Court explained that it could not provide that amount, and volunteered that, as a hypothetical example, there may be "credit for monies already received." *Id*. 18:18-19:16.   The Court explicitly stated that its example was a "hypothetical" explanation of restitution, not a specific reference to the government's forfeiture of the fraud proceeds in the Mazzeis' case.

In light of the foregoing, Attorney Cogdell reasonably did not object or raise the issue of whether forfeiture would be applied toward restitution at the defendant's change of plea or sentencing hearings.   Exh. B at 6-7 (Cogdell Decl.). Moreover, the defendants were not prejudiced by Attorney Cogdell's omission. The prior seizures of funds and assets were credited toward the defendant's forfeiture obligation.   *See* Final Order of Forfeiture 4-6, ECF No. 105. No authority requires that the defendant's restitution obligation also be offset by the money seized in forfeiture.

In sum, Attorney Cogdell's representations and omissions at the plea phase do not satisfy either the *Strickland* incompetence or prejudice prongs.

## C. Attorney Cogdell Provided Reasonable and Competent Legal Assistance at the Defendant's Sentencing

The Motion fails to establish that the defendant received ineffective assistance at the sentencing phase. The Motion raises four claims regarding this phase. Ground One explains that: (1) Attorney Cogdell "did not respond to numerous requests from Petitioner for a [U.S.S.G. §] 5K1.1" cooperation agreement with the government; (2) he "did not argue actual loss v. intended loss;" and that (3) he failed to argue that the government attorney committed "misconduct," which the defendant explains in Ground Two was making "false statements regarding material issues at sentencing hearing." Mot. 4-5. Ground Two also complains that: (3) a "DOJ investigator called a character witness [posing] as a court official to 'verify' his character letter." Mot. 5.

### 1. Attorney Cogdell Relayed the Defendant's Request to Cooperate to the Government Several Times; The Government Did Not Accept

Contrary to the claim made by the Motion, Attorney Cogdell had approached the government on multiple occasions, in writing and over the telephone, with the defendant's offer to cooperate Sentencing Guideline Section 5K1.1. Exh. B at 1-3 (Cogdell Decl.). In particular, the defendant claimed that

he possessed evidence that representatives from various banking institutions had engaged in fraudulent behavior. Based upon its investigation into the defendant's interactions with multiple banks and investment companies, the government determined that the defendant's claims were not credible, and did not accept his offer to cooperate. Attorney Cogdell acknowledges that the government's discovery of "separate and additional fraudulent conduct in the form of mortgage fraud" had made seeking cooperation "exceedingly difficult." *Id*. at 3.

### 2. Attorney Cogdell Reasonably Refrained from Challenging the Court's Correct Sentencing Calculation Based Upon Actual Loss

Attorney Cogdell reasonably refrained from challenging the defendant's sentencing calculation based upon the loss at issue. Sentencing Guideline Section 2B1.1 explains that the Court must determine a defendant's offense level for fraud cases by starting with a base offense level of 7 and then increasing that offense level to the level corresponding to the amount of the loss, as set forth in the loss table at Section 2B1.1(b)(1). The defendants here stipulated that they "obtained approximately $1,365,000.00 in PPP funds" in the MOPA, which represents the actual loss at issue in this case. MOPA ¶ 8(c), ECF No. 79. Section 2B1.1(b)(1) explains that an actual loss amount between $550,000 and $1,500,000 equates to an increase of 14 levels. The Court correctly applied Section 2B1.1(b)(1) and determined that the defendant had a total offense level of 20, after enhancements

21

and adjustments, which carried a guideline range of 33 to 41 months.   PSR ¶ 53, p.

33; U.S. Sentencing Guidelines Ch. 5, Pt. A.

The Motion alleges that Attorney Cogdell "and his team" represented to

him that they would challenge the Court's sentencing calculation by arguing that

the Court erroneously based its calculation upon "intended loss," rather than actual

loss.   Mot. 16.   As further explained by Erin Mazzei's attorney, John Schum, the

Mazzeis apparently believed that the actual loss at issue should have been $0,

possibly because they believed—incorrectly— that the government seized the full

amount of the PPP loan proceeds that they fraudulently obtained, and therefore, the

seized amount should have been credited against their loss for the purposes of

calculating their sentences.   The Motion concludes that, had Attorney Cogdell

pursued this argument, "[t]he sentencing guideline would have been much lower,

most likely resulting in probation. . . ."   Mot. 16.

The Motion is mistaken.   U.S.S.G. Section 2B1.1 defines "actual loss" as

the "reasonably foreseeable pecuniary harm that resulted from the offense."   The

defendant stipulated that he obtained $1,365,000, from the PPP program, which

was the pecuniary harm from the defendant's fraud.   PSR ¶¶ 42, 43; MOPA ¶

8(c), ECF No. 78.   Even if the defendant is correct that the assets that the

government seized from him after his fraud was discovered should be credited

22

against his loss for the purposes of his sentencing calculation,[1] the defendant

clearly intended to obtain the full $1,365,000 loan.   Therefore, the defendant's

conduct would still fall within the Section 2B1.1 definition of "intended loss,"

which is "the pecuniary harm that the defendant purposely sought to inflict."

Accordingly, as Section 2B1.1 defines "loss" as the greater of actual or intended

loss, the defendant's sentencing calculation would still be based upon a $1,365,000

loss.

　　　*United States v. Banks*, cited by the Motion, is inapposite.   55 F.4th 246 (3d

Cir. 2022).   *Banks* stands for the proposition that U.S. Sentencing Guidelines

Section 2B1.1 requires that sentencing calculations for fraud cases must be based

upon the loss at issue, which the Third Circuit held ordinarily meant "actual loss,"

and therefore, the Section 2B1.1 rule commentary that defined "loss" to include

"intended loss" was entitled to "no weight."   *Banks*, 55 F.4th at 258.   However,

*Banks* was never the law in the Ninth Circuit.   *See United States v. Hackett*, 123

F.4th 1005, 1015 (9th Cir. 2024).   Moreover, the U.S. Sentencing Commission

---

[1]  The government does not concede this point, which is unnecessary to resolve here.   *See United States v. Freitekh*, 114 F.4th 292, 320 (4th Cir. 2024) (actual loss is not reduced by amount recovered after detection); *see also* U.S.S.G. § 2B1.1, Application Note 3(D)(i) ("Credits Against Loss – Loss shall be reduced by the following: The money returned . . . by the defendant . . . to the victim *before* the offense was detected.") (emphasis added).

superseded *Banks* by incorporating the definition of intended loss into the main body of Section 2B1.1, and pulling it out of the rule commentary. *See* U.S.S.G. § 2B1.1(b)(1) (*Notes to Table: (A) Loss—Loss is the greater of actual loss or intended loss.") (2024). The 2024 Sentencing Guidelines Manual, which the Probation Office relied upon in calculating the defendants' sentences, reflects this change. *See* PSR ¶ 42. Therefore, the Section 2B1.1 definition of "intended loss" applies in the Ninth Circuit and the defendant is responsible for a fraud loss of $1,365,000 under either definition of actual or intended loss.

In sum, the Court's sentencing calculation was accurate and Attorney Cogdell reasonably did not challenge it.

3. No Prejudice Resulted from Attorney Cogdell's
   Decision Not to Object to the Factual Record at Sentencing

The Motion also does not establish any prejudice to the defendant from Attorney Cogdell's failure to object to "several false statements regarding material issues at [the] sentencing hearing" by the government attorney. Motion 4, 5. In his attached brief, the defendant details four purportedly untrue statements made by the government at sentencing to support its recommended sentence: "the Kapolei condo was purchased solely for a VRBO home;" "the claim that PPP funds were used to pay off the Arroyo Grande, California home mortgage;" "the claim that Mazzeis purchased a billboard to get the attention of Dwayne "The

24

Rock" Johnson;" and the mischaracterization of Ohana Project as a 'vanity television project.'"   *Id.* 17.

Attorney Cogdell's failure to object to the government's purported statement regarding the purpose of the Mazzeis' Kapolei condominium did not prejudice the defendants.   As to this matter, the salient fact for sentencing was that the Mazzeis defrauded the PPP loan program to purchase an asset for personal use, not the particular personal use that the Mazzeis found for the asset.   Nonetheless, Attorney Cogdell was able to clarify at sentencing that his client had indeed further profited off the Kapolei condo that the Mazzeis purchased with PPP proceeds by listing it on a short-term rental website, VRBO, just as the government alleged, but had only done so "after the fraud was discovered."   Exhibit C (Transcript of January 9, 2025 Sentencing Hearing 43:7-10).   As the defendant was able to address this nonsalient point, he was not prejudiced by the government's statement.

Similarly, the Motion fails to establish that the defendant was prejudiced by Attorney Cogdell's failure to object to the government's argument that the Mazzeis sought the attention of producer Dwayne "The Rock" Johnson for their fraudulently-funded venture, and the government's argument that the venture was a "vanity television project."   Neither statement was material to the defendant's sentence: both defendants admitted that they intentionally misused PPP loan funds

25

to "develop various film and television projects" and that they "spent approximately $164,796 to film a promotional trailer for a project 'Ohana' that they planned to produce in the State of Hawaii."   MOPA ¶ 8(q), ECF No. 78. Moreover, Motion's supporting documentation admits that the Mazzeis had in fact purchased a billboard to reach Dwayne Johnson to promote their fraudulent PPP-funded business venture, albeit with non-PPP funds.   Mot. 40 ("The DOJ seized all our assets and funds on May 25, 2021. The funds used to purchase this billboard were given to us by a family friend.").

Finally, Attorney Cogdell reasonably did not argue to the Court the Motion's erroneous claim that the defendant's fraudulently-obtained PPP funds were not used to pay the mortgage on his home in Arroyo Grande; the sentencing record amply refutes this claim.   The Mazzeis both pled guilty to Count 3 of the Indictment, which charged them with wire fraud conspiracy in connection with a scheme to fraudulently obtain PPP loan funds.   Indictment 6-16, ECF No. 1.   As charged in the Indictment, pursuant to Title 18, United States Code, Section 982(a)(2)(A), the government was entitled to "any and all property, real or personal, that … is derived from proceeds traceable to, or . . . obtained directly or indirectly as a result of, violations of" the Count 3 wire fraud conspiracy.   *Id.* 20. The Indictment gave notice to the Mazzeis that the government was seeking to

26

forfeit the "real property located at […] Arroyo Grande, California," as "derived from proceeds traceable to" their wire fraud conspiracy, charged in Counts 1 and 3. *Id.* 21, ECF No. 1.

Moreover, Christopher Mazzei agreed in the MOPA to forfeit "all of his right, title, and interest" in the Arroyo Grande property, and "acknowledge[d] that the . . . Specific Property [was] subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A) as property . . . derived from proceeds [he] obtained directly or indirectly as a result of the conspiracy to commit wire fraud."   MOPA ¶¶ 15(a), (b), ECF No. 78.   Both Mazzeis acknowledged the government's authority to forfeit the Arroyo Grande house at their change of plea hearing.   Exh. A (Aug. 28, 2024 Hrg. Tr. 37:16-20).

Following review of the evidence, including the Mazzeis' admissions, the PSR found that "the Mazzeis utilized [fraudulently-obtained PPP funds] on personal and other expenses that did not fit the purpose of the loans[, including] $39,445 for mortgage payments on their residence located [in] . . . Arroyo Grande California."   PSR ¶ 27.   In light of the foregoing, the argument that the Mazzeis' Arroyo Grande house was not paid for in part from fraudulently-obtained PPP funds would have been meritless.

The Motion buries elsewhere in its pages other factual claims that it argues Attorney Cogdell was ineffective for failing to raise: i.e., [1] "evidence that banks were not fully knowledgeable of the [PPP] guidelines. . . [2] banks . . . [were] incentivized to turn in those that received PPP loans, and [3] the legitimate business evidence of the Ohana Project."   Motion 17.   The mental state of victim banks is irrelevant to the defendant's guilt or any Section 3553(a) sentencing factor.   Similarly, the salient fact about the Mazzeis' Ohana television venture was that the Mazzeis defrauded the Paycheck Protection Program by lying on multiple applications about business operations and salaries for employees that did not exist in order to fund their unrealized filmmaking dreams.   Attorney Cogdell reasonably did not raise these irrelevant or unhelpful arguments to the Court.

4. No Prejudice Resulted From Attorney Cogdell's Failure to Raise Other Arguments Regarding Government Conduct At or After Sentencing

The Motion also argues that Attorney Cogdell was ineffective for failing to raise to the Court's attention two other acts of purported prosecutorial misconduct: first, a "DOJ investigator called a character witness pos[ing] as a court official to 'verify' his character letter," and second, that the prosecutor "used forfeited funds to bid at [the] foreclosure auction for personal gain."   Motion 5.   The Motion does not establish that the defendant was prejudiced by either purported act.

28

As to the first claim, the defendant was not prejudiced by the government's verification of a character letter that the defendant submitted for the Court's consideration at sentencing.   The defendant attached the character letter at issue to his Motion.   Motion 53-54.   The defendant had attached the same letter to his Sentencing Memorandum.   ECF No. 103-1 at 20-21.   The Court considered the letter as part of its Section 3553(a) analysis when it determined its sentence.   The Motion therefore does not establish that the defendant was prejudiced by the government's verification of the letter's authenticity.[2]

Second, the Motion fails to establish that the defendant was prejudiced by Attorney Cogdell's purported failure to raise to the Court's attention his accusation that the government attorney had "used forfeited funds to bid [for the defendant's Arroyo Grande home] at foreclosure auction for personal gain."   Mot. 5.   The defendant supports this claim with a text message that he claims is from a friend who was present at the foreclosure auction and who reported, "[t]he feds were bidding it up."   *Id.* 60.

---

[2] The government acknowledges that a case agent called the author of the character letter, P.J.H. to verify that he had written the letter.   As referenced in the plea agreement, the government had discovered that the defendants had previously used P.J.H.'s identity without his/her consent in connection with an uncharged wire fraud.   MOPA ¶ 4, ECF No. 78.

This allegation regarding the prosecutor's purported misconduct is disputed and would not have prejudiced the defendant in any event.   By the time of their sentencing, the defendants had already agreed that their Arroyo Grande home was subject to forfeiture in its entirety by the government.   *See* Order of Forfeiture (Money Judgment) and Preliminary Order of Forfeiture (Specific Property) 9, ECF No. 80.   Following publication of notice pursuant to 21 U.S.C. § 853(n)(3), two interested parties filed petitions with the Court giving notice of their interests in the property that were superior to the government's.   ECF Nos. 81, 86.   All interested parties then entered into a stipulation whereby the senior-most lienholder would complete foreclosure proceedings against the Arroyo Grande home, and the parties would distribute the proceeds according to lien priority.   Stipulation 5-6, ECF No. 101.   Ultimately, the sale took place on January 21, 2025 and the home was purchased by a third-party bidder.   Exhibit D.   The proceeds were distributed according to the parties' stipulation.

Separate and apart from whether any misconduct took place—which the government vigorously disputes—the foreclosure sale process did not affect the defendant, and did not take place until after the defendants' January 9, 2025 sentencing.   Accordingly, Attorney Cogdell would not have been able to raise this

30

issue to the Court's attention at sentencing, and the Motion fails to demonstrate that the defendant was prejudiced by any conduct of his attorney.

### D. The Motion's Remaining Claims Pertaining to Attorney Cogdell Fail to Demonstrate Any Prejudice

The Motion levels two other accusations against Attorney Cogdell that fail to satisfy the defendant's burden to establish ineffective assistance.   For instance, the Motion claims that: (1) Attorney Cogdell was "undergoing a family health issue, which hampered his ability to mount a defense," and (2) he would not remove himself after concerns were raised of his ability to defend after Change of Plea hearing."   Motion 4.

The defendant provides no detail to support his accusation that Attorney Cogdell's representation was "hampered" by personal circumstances; this is a sufficient basis upon which to reject this claim.   *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Attorney Cogdell details his extensive efforts to advise the defendant prior to the defendant's decision to change his plea and at the sentencing phase.   Exh. B at 4-5 (Cogdell Decl.).   After he was retained, Attorney Cogdell reviewed the case discovery and new investigative materials provided by the government, and communicated with the defendant multiple times a month via telephone and e-

31

mail.  *Id.* 4.  Attorney Cogdell provided his client with advice regarding his client's likelihood of success at trial, and his assessment of the defendant's sentencing exposure.  *Id.*  After the defendant decided to plead guilty, Attorney Cogdell negotiated the terms of his client's plea agreement and accompanied the defendant at his change of plea hearing.  *Id.*  After the defendant entered his guilty plea, Attorney Cogdell provided the defendant with his presentence investigation report.  *Id.* 5.  Attorney Cogdell and his associates worked with the defendant to prepare a Sentencing Memorandum, including legal objections.  *Id.* In preparation for sentencing, Attorney Cogdell conferred with the defendant several times on the telephone and once in person, and he gave the defendant an overview of what to expect at sentencing.  Exh. B at 5.  In addition, Attorney Cogdell worked with the defendant on his allocation.  *Id.*  In sum, Attorney Cogdell provided exemplary legal assistance to the defendant.

Similarly, the defendant provides no detail regarding his claim that Attorney Cogdell "would not remove himself" from representation.  Attorney Cogdell denies that the defendant made any request that he withdraw from representation. *Id.* 5.

Finally, the Motion claims without support that the Court erred by assigning him a "Personal Injury Attorney," "instead of a Criminal Defense attorney."

32

Motion 8.   The docket indicates that Christopher Mazzei was represented by five attorneys since his Indictment.   The Court appointed three attorneys to represent him.   Each of the appointed attorneys were drawn from the Court's Criminal Justice Act panel.   Following these appointments, Christopher Mazzei chose to retain Andrew Marcantel, before terminating Marcantel's services and retaining Attorney Cogdell.   The Motion does not establish that his representation by his three appointed counsel prejudiced him later, when he was represented by Attorneys Marcantel and Cogdell.   Therefore, the Motion's allegation that his appointed counsel did not possess criminal expertise is insufficient to establish either incompetence or prejudice.

In sum, the Motion has failed to satisfy either the incompetence prong or prejudice prong of *Strickland* with respect to the defendant's representation, and, therefore, the defendant has failed to demonstrate that he received ineffective assistance of counsel.

IV.   Most of the Motion's Grounds are
       Procedurally Defaulted [Grounds II, III, IV]

Separate and apart from the fact that the defendant waived the right to collaterally challenge his conviction and sentence, other than upon the basis of ineffective assistance of counsel, he procedurally defaulted many of the claims in the Motion.   Among other grounds, the Motion alleges: (1) violations of the

33

defendant's pre-guilty plea discovery rights,[3] (2) an illegal plea agreement term,[4] (3) improper venue,[5] (4) erroneous notice of forfeiture and restitution at the change of plea hearing;[6] (5) erroneous restitution and sentence calculations;[7] (6) a Speedy Trial right violation;[8] and (7) erroneous forfeiture procedure.[9]

All these arguments were procedurally defaulted because the defendant failed to raise them upon direct appeal.   The Ninth Circuit has held that Section 2255 may not be invoked to "relitigate questions which were *or should have been raised* on a direct appeal from judgment of conviction.   *United States v. Marchese*, 341 F.2d 782, 789 (9th Cir. 1965) (emphasis added), *citing Dodd v. United States*, 321 F.2d 240 (9th Cir. 1963).   Thus, "grounds which were apparent when appellant appealed from his convictions cannot, thereafter, be made the basis for an attack on a motion to set aside judgment and sentence."   *Hammond v. United*

---

[3]  "AUSA Gregg Yates suppressed emails from loan originators;" Mot. 5, 17. "Exculpatory evidence was barred from being presented;" *Id.* 8, 19.

[4]  "AUSA Yates tendered a plea deal that prohibited ALL downward departures." *Id.* 5; 17.

[5]  "Venue being improper was never argued;" *Id.* 8, 19.

[6]  "Court misled defendants at Change of Plea hearing about how recovered/forfeited funds would be applied to restitution."   *Id.* 7.

[7]  "Judge . . . still had required more payment than what was lost;" Mot. 7.   "Court did not calculate sentence based on actual loss."   *Id.*

[8]  "Right to Speedy trial was waived by attorney, not petitioner." *Id.* 8.

[9]  "DOJ violated their forfeiture policy, starting a 90-day window for charges to be filed after assets are seized, or the property is to be returned.   Mazzei claims that it took an entire year for charges to be filed." *Id.* 18.

34

*States*, 408 F.2d 481, 483 (9th Cir. 1969).   Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in

habeas only if the defendant can first demonstrate cause and actual prejudice.

*Bousley v. United States*, 523 U.S. at 622; *Massaro v. United States*, 538 U.S. 500,

504, 123 S.Ct. 1690, 155 L.Ed. 2d 714 (2003).   However, cause "must be

something external to the [defendant], something that cannot be fairly attributed to

[her]."   *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).   Therefore, a plea

agreement waiver cannot constitute cause."   *Garcia-Santos v. United States*, 273

F.3d 506, 508 (2d Cir. 2001).

As the facts supporting each of the aforementioned arguments were known

to the defendant at the time of his sentencing and judgment, the defendant could

have raised them on appeal, had he not waived his right to appeal in his plea

agreement.   As the defendant's appellate waiver does not constitute cause to

permit these claims here, the aforementioned claims were procedurally defaulted

and may not be raised for the first time in a motion pursuant to Title 28, United

States Code, Section 2255.

V.    Defendant's Remaining Grounds are Not Cognizable
      Under Section 2255 [Ground III]

Ground III of the Motion relating to "Forfeiture and Restitution Issues" does

not state a claim for Section 2255 relief.   Ground III challenges the defendant's

35

restitution order, in part, upon the grounds that the court "required more payment than what was lost" and that the Court failed to give proper notice to the defendants "about how recovered/forfeited funds would be applied to restitution," Mot. 7, which gave "the impression [the] Mazzei[s] would not pay twice for the same amount." *Id.* 18.   In addition, the Motion's attached brief alleges that the government "violat[ed] their forfeiture policy, [which] stat[es that there is] a 90-day window for charges to be filed after assets are seized, or the property [must be] returned." *Id.* 18.

"[B]y its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released." *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002).   Therefore, a Section 2255 motion may not be used to challenge a restitution order or a forfeiture order.   *See id.* (restitution); *United States v. Finze*, 428 Fed. Appx. 672, 677 (9th Cir. 2011) (unpublished) (forfeiture). Moreover, the Motion's claim that the government's forfeiture violated its internal policies is also not cognizable under Section 2255.   *C.f. United States v. Timmreck*, 441 U.S. 780, 783-84 (1979) (violations of Federal Rules of Criminal Procedure are non-cognizable).

//

//

CONCLUSION

In light of the foregoing, the United States respectfully requests that this

Court deny the defendant's motion to vacate or set aside his conviction or sentence.

DATED:   March 20, 2026, at Honolulu, Hawaii.

KENNETH M. SORENSON
United States Attorney
District of Hawaii


By */s/ Gregg Paris Yates*
   GREGG PARIS YATES
   Assistant U.S. Attorney

37